UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAISANO CAPITAL SA DE CV, d/b/a PRODUCTOS PAISANO, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO.: 3:19-CV-0852-B |
| 23 TEXAS PRODUCE, INC., a Texas corporation; JOEL SALAZAR, an individual; and MARICELA SALAZAR, an individual, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Paisano Capital SA de CV's, doing business as Productos Paisano, Motion for Entry of Default Judgment (Doc. 14), filed on June 14, 2019, against Defendants 23 Texas Produce Inc., Joel Salazar, and Marciela Salazar. For the reasons discussed below, the Court **ENTERS an ORDER OF DEFAULT JUDGMENT** against Defendant 23 Texas Produce, Inc.. Further, the Court **GRANTS** Plaintiff's request for damages.

## I.

## BACKGROUND[1]

This case arises from a series of contracts (the Agreements) between Plaintiff and Defendants for the purchase and sale of produce. Plaintiff, Paisano Capital SA de CV, doing business

---

[1] Because Defendant has failed to answer, the Court accepts as true the well-pleaded allegations of the facts in the Complaint (Doc. 1). *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

- 1 -

as Productos Paisano, entered into the Agreements with Defendants—a Texas corporation that buys produce ("Texas Produce") and two individual corporate officers—to ship and sell certain quantities of limes. Doc. 1, Compl., ¶ 1, 27–29; *e.g.*, Doc. 1-1, Ex. A, 2 (invoice for limes). Plaintiff shipped the agreed-upon quantities, which Texas Produce accepted without objections. Doc. 1, Compl., ¶¶ 7–8. Plaintiff then forwarded invoices to Texas Produce that reflected the quantity shipped and amounts owed by Texas Produce, which Texas Produce failed to pay. *Id.* ¶¶ 9, 12. Texas Produce never denied receiving the invoices and nor objected to the terms and conditions contained therein. *Id.* ¶¶ 10–11.

Plaintiff filed this case on April 5, 2019, alleging that Texas Produce's failure to pay the invoices despite accepting delivery of the limes constituted a breach of contract and a violation of the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499b(4). *Id.* ¶¶ 12, 19–20. The complaint further alleged that the actions of the two individual corporate officers constituted a breach of fiduciary duties to creditors. *Id.* ¶ 25–45. On April 16, 2019, process was served on all Defendants. Docs. 9–11, Executed Summons. Defendants failed to answer or otherwise defend this lawsuit within the time allowed. Consequently, on May 21, 2019, the Clerk of the Court entered a default (Doc. 13) against Defendants. Plaintiff filed its present motion (Doc. 14) on June 14, 2019. In its motion, Plaintiff acknowledged that the two corporate officers have filed individual Chapter 13 Bankruptcy Petitions in the United States District Court for the Eastern District of Texas, and as a result, the action is stayed as to the two corporate officers only.[2] Doc. 14, Pl.'s Mot.

---

[2] It is a "well established rule" that an automatic stay does not apply to proceedings against non-bankrupt co-defendants. *Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 230 n.4 (5th Cir. 1986). This applies even when the bankrupt individuals own 100% of the stock of the non-bankrupt corporation. *See Pers. Designs, Inc. v. Guymar, Inc.*, 80 B.R. 29, 30 (E.D. Pa. 1987).

Default J., 1–2. In support of its motion, Plaintiff filed Exhibits that included: the Declarations of Luis A. Camacho Guzman, General Counsel for Plaintiff (Doc. 14-1), and Steven M. De Falco, Attorney for Plaintiff (Doc. 14-2); copies of invoices sent directly to Texas Produce (Doc. 14-1, Ex. 1); and documentation showing expenses incurred by Plaintiff for attorney's fees and court costs (Doc. 14-2, Exs. 2–3). Texas Produce has again failed to respond. Plaintiff's motion is now ripe for review.

## II.

## LEGAL STANDARDS

*A.     Default Judgment*

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b). Through the entry of default judgment, the "conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H Inc.*, 967 F.2d 194, 205 (5th Cir. 1992). In considering a motion for default judgment, the court accepts as true the well-pleaded allegations of facts in the complaint. *Nishimatsu Constr.*, 515 F.2d at 1206.

In determining whether a default judgment should be entered against a defendant, courts have developed a two-part analysis. *See, e.g., Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *2–3 (S.D. Tex. Oct. 5, 2011). First, the court must consider whether the entry of default judgment is appropriate under the circumstances. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include whether: (1) material issues of fact exist; (2) there has been substantial prejudice; (3) the grounds for default are clearly

established; (4) the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) the court would think itself obliged to set aside the default on the defendant's motion. *Id.* Second, the court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr.*, 515 F.2d at 1206. Although the defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

## III.

## ANALYSIS

A.   *Whether Default Judgment is Appropriate*

In deciding whether default judgment is appropriate, the Court considers the six factors outlined in *Lindsey*. Applying them to this case, the Court finds that they weigh in favor of default. First, Texas Produce has not filed any responsive pleadings. Consequently there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Second, Texas Produce's "failure to respond threatens to bring the adversary process to halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default have been clearly established by Texas Produce's failure to respond to the Complaint and the entry of default by the clerk. Fourth, there is no evidence before the Court to indicate that Texas Produce's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Indeed, Texas Produce has had plenty of time—approximately three months—to answer and has filed nothing with the Court to explain its reticence. *C.f. Elite v. The KNR Group*, 216 F.3d 1080 (Table), 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam)

(holding default judgment to be inappropriate where defendant sent a letter to court explaining his failure to appear was due to financial privation). Fifth, Plaintiff only seeks the relief to which it is entitled under law, mitigating the harshness of default judgment. And sixth, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Texas Produce. *See id.* Therefore, the Court concludes that default judgment is proper.

B.      *Whether There is a Sufficient Basis for Judgment on the Pleadings*

Due to its default, Texas Produce is deemed to have admitted the allegations of breach of contract and violation of PACA set forth in the Complaint. Nonetheless, the Court must review the pleadings to determine whether Plaintiff can establish a viable claim for relief. *See Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover").

1.      Breach of Contract

Plaintiff first moves for default judgment on its claim for breach of contract. Doc. 1, Compl., ¶¶ 6–14. Under Texas law, the elements of a breach of contract claim are: "'(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

In deciding whether there is a sufficient basis on the pleadings, the Court considers the four elements outlined in *Smith*. Applying them to this case, the Court finds there is a sufficient basis for judgment in the pleadings. First, the Complaint alleges that the Agreements to exchange produce between Plaintiff and Texas Produce constituted a contract. Doc. 1, Compl., ¶ 7. Second, Plaintiff

alleges that it tendered performance by delivering the requested quantities of produce, and that Texas Produce accepted the produce without objection. *Id.* ¶¶ 7–8. Plaintiff attached copies of the invoices for the accepted produce as evidence. Doc. 1-1, Ex. A, 2–5. Third, the pleadings allege that Texas Produce breached the contract by failing to pay for the produce that Plaintiff delivered. Doc. 1, Compl., ¶ 12. And fourth, Plaintiff alleges that Texas Produce's breach resulted in actual damages in the amount of $44,796.97.[3] Doc. 14, Pl.'s Mot. Default J., 5. Thus, accepting Plaintiff's allegations as true based on Texas Produce's default, the Court finds that there is a sufficient basis in the pleadings for the requested default judgment as to the breach of contract claim. *See Nishimatsu Constr.*, 515 F.2d at 1206.

2. PACA Violation

Plaintiff also moves for default judgment on its PACA claim on the basis that it has sufficiently alleged Texas Produce's violation of PACA's prompt payment requirement. Doc. 1, Compl., ¶¶ 19–20.

In 1930, Congress enacted PACA to regulate the sale of perishable agricultural commodities in interstate commerce. *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1066 (2d Cir. 1995). The term "perishable agricultural commodities" means fresh fruits and vegetables "of every kind and character." 7 U.S.C. § 499a(b)(4). PACA requires all commission merchants, dealers, and brokers in perishable agricultural commodities to be licensed and prohibits such entities from engaging in certain unfair trade practices, including a failure to pay promptly. *E.g.*, 7 U.S.C.

---

[3] Plaintiff claims two different totals for actual damages throughout its filings. Doc. 14, Pl.'s Mot. Default J., 5–6. The Court uses the amount cited in Camacho Guzman's sworn declaration because that is what the provided invoices support.

§ 499b(4). In 1984, in response to a large number of produce buyers who had received perishable agricultural goods without paying for them, Congress amended PACA to provide greater protection for sellers of produce. *Endico*, 67 F.3d at 1067. Specifically, Congress added provisions to § 499e that create a statutory trust for the benefit of unpaid sellers and suppliers on inventories of commodities and products and proceeds of sale. *Id.* Section 499e(c)(2) provides:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers or agents.

7 U.S.C. § 499e(c)(2). Courts have interpreted the current version of PACA as providing a cause of action only to a trust beneficiary and the Secretary of Agriculture. *E.g.*, *Jacobs Silver K Farms v. Taylor Produce, L.L.C.*, 101 F. Supp. 3d 962, 968 (D. Idaho 2015) ("[T]he plain text of PACA does not expressly provide for a private right of action for anyone other than the Secretary of Agriculture and the PACA trust beneficiaries."). Thus, to recover under PACA, Plaintiff must establish that it is a trust beneficiary, and that a PACA trust was formed.

A PACA trust has five elements: (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer, or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by law. 7 U.S.C. § 499e. The PACA trust automatically arises when the perishable agricultural commodities are delivered. *Id.*

§ 499e(c)(2). If the notice is provided on the seller's billing or invoice statement to the buyer, the billing or invoice statement must contain the following exact language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

*Id.* § 499e(c)(4). Without this language, the unpaid seller loses its trust benefits unless it provides written notice as specified in 7 U.S.C. § 499e(c)(3).

Here, Plaintiff does not show that a PACA trust exists. Specifically, Plaintiff has not established the fifth element of a PACA trust—required notice. Plaintiff's invoices do not contain the language set forth in § 499e(c)(4), nor does Plaintiff allege that it provided another form of notice accepted under PACA. *See* Doc. 1-1, Ex. A (invoices). Thus, the Court finds Plaintiff has failed to adequately plead a violation of PACA and dismisses the PACA claim.

C.  *Damages*

Plaintiff requests actual damages, pre- and post-judgment interest, attorney's fees, and costs. The Court considers each of Plaintiff's monetary requests in turn.

  1.  Actual Damages

The Court considers Plaintiff's request for $44,796.97 in actual damages. Doc. 14, Pl.'s Mot. Default J., 4. "A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." *Ins. Co. of the W.*, 2011 WL 4738197, at *4 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002)). Normally damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary

facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 370 (5th Cir. 1993). It remains the plaintiff's burden to provide an evidentiary basis for the damages it seeks. *Broad. Music, Inc. v. Bostock Billiards & Bar Assoc.*, 2013 WL 12126268, at *3 (N.D. Tex. Jan. 18, 2013). Courts have found that copies of contracts, invoices, purchase orders, emails with payment details, and statements of anticipated costs, together with computations and affidavits, are a sufficient evidentiary basis for damages. *See Genesis Servs., Inc. v. Screens Plus, Inc.*, 2016 WL 7036791, at *6 (W.D. La. Nov. 7, 2016) (holding that copies of invoices and affidavits were sufficient evidence to mathematically calculate damages); J*etstream of Houston, L.L.P. v. Cajun Pressure Control, L.L.P.*, 2016 WL 3024751, at *4 (W.D. La. Apr. 15, 2016) (holding that affidavits, copies of contracts, and invoices were enough evidence to show entitlement to damages).

Plaintiff requests $44,796.97 of actual damages based on the principal balance of the amount owed by Texas Produce. Doc. 14-1, Camacho Guzman's Decl., ¶ 8. In support of its request, Plaintiff has provided evidence of the type readily accepted by our sister courts as cited above. *See, e.g., Genesis Servs.*, 2016 WL 7036791, at *6. Plaintiff submitted copies of invoices showing the amount of produce delivered and the total amounts owed by Texas Produce. Doc. 1-1, Ex. A, 2–5. The Declaration submitted by Camacho Guzman affirms this amount. Doc. 14-1, Camacho Guzman's Decl., ¶¶ 4–5, 8. The Court accepts the invoice amounts and their supporting documentation. Ultimately, the Court finds that the amount of damages owed to Plaintiff by Texas Produce is

capable of mathematical calculation based on Plaintiff's supporting documents.[4] Therefore, the Court grants Plaintiff's request for damages in the amount of $44,796.97.

    2.    Pre- and Post-Judgment Interest

Plaintiff also requests pre-judgment interest at a rate of six percent (6%) per annum, as well as post-judgment interest at the statutorily determined rate. Doc. 14, Pl.'s Mot. Default J., 4–5. Plaintiff identifies Texas Finance Code § 302.002 as the governing statute for awarding pre-judgment interest at the rate of 6% in this case. Doc. 1, Pl.'s Mot. Default J., 4. But § 302.002 does not apply to an award of pre-judgment interest. *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 329–30 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The Texas Finance Code does explicitly provide for the award of pre-judgment interest for damages arising from wrongful death, personal injury, and property damage. Tex. Fin. Code §§ 304.101–103. However, none of those claims are implicated here. As a result, the Court finds that there is no statute explicitly governing the award of pre-judgment interest in this case.

Yet, the Texas statutory pre-judgment interest scheme cannot be discounted, because the Texas Supreme Court has held that common law pre-judgment interest should resemble the pre-judgment interest law enacted by the Texas legislature. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 530–31 (Tex. 1998). Under Texas law, courts are to rely on general principles of equity to determine pre-judgment interest when there is no enabling statute regarding pre-judgment interest. *Id.* at 528. The Texas Finance Code not only sets the rate of pre-judgment interest, but also states that pre-judgment interest begins to accrue on the earlier of (1) 180 days after

---

[4]Specifically, $13,397.07 + $9,971.50 + $11,649.50 + $9,778.90 = $44,796.97.

the date the defendant receives written notice of a claim or (2) the date the suit is filed. Tex. Fin. Code §§ 304.103–104.

Here, pre-judgment interest is left to the Court's determination, as there is no statute that governs the award. In keeping with the principles articulated in *Johnson & Higgins*, the Court will follow the pre-judgment interest rules described in the Texas Finance Code. Therefore, the pre-judgment interest rate is 5.5%.[5] As for when pre-judgment interest began to accrue, the evidence shows that notice of the claim was given to Texas Produce on August 22, 2017, and suit was filed on April 5, 2019. Doc. 1-2, Ex. B. Because 180 days after the Texas Produce received notice of the claim—February 18, 2018—is the earlier of the two dates, pre-judgment interest will accrue based on the notice. Thus, the Court calculates pre-judgment interest to be $3,476.37 from February 18, 2018, to the date of judgment, July 18, 2019, with a daily per diem of $6.75 each day thereafter.

Turning to post-judgment interest, the Court considers Plaintiff's request for interest at the statutorily determined rate. Doc. 14, Pl.'s Mot. Default J., 5. "Interest shall be allowed on any money judgment in a civil case recovered in district court." 28 U.S.C. § 1961(a). Simply put, district courts do not have the discretion to deny post-judgment interest on monetary judgments. *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 855 (S.D. Tex. 2017) (citing *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010)). Thus, post-judgment interest "shall be calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve system, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Therefore, the Court

---

[5] Rates found at https://occc.texas.gov/publications/interest-rates.

grants Plaintiff's request for post-judgment interest on all damages awarded herein, at the statutory rate,[6] from the entry of this Final Default Judgment until paid.

   3.  Attorney's Fees and Costs

   *1.*  *Attorney's fees*

In its Motion, Plaintiff requests an award of reasonable attorney's fees. Doc. 14, Pl.'s Mot. Default J., 4. A prevailing party in a civil action may recover attorney's fees from a corporation in a claim for a written contract. Tex. Civ. Prac. & Rem. Code § 38.001(8); *see also* Fed. R. Civ. P. 54(d)(2). While § 38.001(8) uses the term "may," "the Texas Supreme Court has declared that attorneys' fees under section 38.001 are not discretionary." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603 n.3 (5th Cir. 2000) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998)). This is true even in the default judgment context. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1488 (5th Cir. 1990) (upholding an award of attorney's fees granted as part of a default judgment).

The Fifth Circuit has described the basic procedure and standard for determining attorney's fees as follows:

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 Fed. App'x 116, 124 (5th Cir. 2012) (quoting *Jimenez v. Wood Cty*, 621 F.3d

---

[6] The post-judgment interest rate is found at: http://www.txnd.uscourts.gov/post-judgment-rates.

372, 379–80 (5th Cir. 2010)). The *Johnson* factors are: (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19. Accordingly, the Court will look to the presented evidence dana apply the lodestar method and make adjustments, if necessary, with respect to the *Johnson* factors.

The first step in the lodestar analysis requires the Court to determine the reasonable number of hours expended by Plaintiff's attorneys on the lawsuit, as well as the reasonable hourly rate for the attorneys involved. *Smith*, 478 Fed. App'x at 124. The party requesting fees has the burden of establishing a reasonable hourly rate. *Kryptek Outdoor Grp., LLC v. Salt Armour, Inc.*, 2016 WL 7757267, at *5 (E.D. Tex. Mar. 28, 2016)(citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). "The reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *BMO Harris Bank, N.A. v. RidgeAire, Inc.*, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (quoting *Blum*, 465 U.S. at 896 & n.11.).

Here, Plaintiff's attorney has provided a Declaration listing the amount of time spent and work performed in the case. *See generally* Doc. 14-2, De Falco's Decl. Attorney De Falco performed 19.1 hours of work at a rate of $315.00 per hour and 1.0 hour of work at a rate of $195.00 per hour; Attorney Steven E. Nurenberg performed 0.8 hours of work at a rate of $335.00 per hour; Attorney Robert Yaquinto, Jr. performed 2.4 hours of work at a rate of $425.00 per hour; Paralegal Luanne Rogers performed 12.2 hours of work at a rate of $195.00 per hour; and Legal Assistant Dana

Wiggins performed 0.9 hours of work at a rate of $125.00 per hour.[7] Doc. 14-2, Ex. 2, 23–27.

After reviewing Attorney De Falco's declaration as well as the supporting invoices, the Court finds that the time expended by the attorneys and their paralegals and assistants was reasonable. Nothing indicates that any individual was billing for "excessive, duplicative, or inadequately documented" time. *See Smith*, 478 Fed. App'x at 124. Consequently, the Court accepts these hours as part of its lodestar calculation.

With respect to the hourly rates, the Court also finds the amounts were reasonable. Attorney De Falco avers that his rate, as well as the rates of the other attorneys and paralegals on this case, is in line with the range of fees customarily charged by lawyers with similar experience and expertise. Doc. 14-2, De Falco's Decl., ¶ 20. Thus, in light of his declaration, as well as the Court's own knowledge of rates charged for legal services by attorneys with similar levels of skill, experience, and competence, the Court is comfortable using the hourly rates provided.

Accordingly, the Court finds the attorney's fees to be: (1) $6,211.50 for Attorney De Falco (19.1 hours x $315.00 + 1.0 hour x $195.00); (2) $268.00 for Attorney Nurenberg (0.8 hours x $335.00); (3) $1,020.00 for Attorney Yaquinto, Jr. (2.4 hours x $425.00); (4) $2379.00 for Paralegal Rogers (12.2 hours x $195.00); and (5) $112.50 for Legal Assistant Wiggins (0.9 hours x $125.00). Considering the twelve *Johnson* factors described above, the Court does not find it necessary to make any adjustments to these figures. Accordingly, Plaintiff's request for attorney's fees is granted in the amount of $9,991.00.

---

[7] The Court relies on the underlying invoices as there appear to be typographical errors in the Declaration.

*2. Costs*

A prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides otherwise. *See* Fed. R. Civ. P. 54(d)(1). Taxable court costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of the deposition transcript; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case. 28 U.S.C. § 1920. Here, Plaintiff seeks $586.03 in costs, namely the filing fee ($400.00), the service of process fees ($185.00), and its document fee ($1.03). Doc. 14-2, Ex. 4, 34–37. These are both reasonable and taxable under the law. *See Blake Box v. Dallas Mexican Consulate Gen.*, 2014 WL 3952932, at *6 (N.D. Tex. Aug. 8, 2014), *aff'd sub nom. Box v. Dallas Mexican Consulate Gen.*, 623 F. App'x 649 (5th Cir. 2015). Therefore, the Court grants Plaintiff's request for costs in the amount of $586.03.

## IV.

## CONCLUSION

For the above stated reasons, the Court **ENTERS an ORDER OF DEFAULT JUDGMENT** against Defendant. Further, the Court **GRANTS** Plaintiff's request for damages. Specifically, the Court **GRANTS** Plaintiff's request for actual damages in the amount of $44,796.97, pre-judgment interest in the amount of $3,476.37 from February 18, 2018, to the date of judgment, July 18, 2019, with a daily per diem of $6.75 each day thereafter, attorney's fees in the amount of $9,991.00, and costs in the amount of $586.03, for a total judgment amount of $58,850.37. Additionally, the Court awards Plaintiff post-judgment interest on all sums awarded herein, at the statutory rate, from the date of this order until paid. As there is no just reason for delay, a final judgment on Plaintiff's claims against Defendant 23 Texas Produce, Inc. will follow.

SO ORDERED.

DATED July 18, 2019.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE